IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                    :          Case No. 1:10-MC-0064
ANDREW J. OSTROWSKI                        :
                                           :
                                           :          (Judge Brann)

**MEMORANDUM OPINION**

February 24, 2014

## I. BACKGROUND

"Music expresses that which cannot be said and on which it is impossible to

be silent."[1]  Petitioner, Andrew J. Ostrowski, frequently and publicly has trumpeted

his displeasure with the bench of the United States District Court for the Middle

District of Pennsylvania.  The air behind Mr. Ostrowski's groundless statements is

more appropriately relegated to the wind section of an orchestra – his fantastical

prevarications are calumniatory and indicate that Mr. Ostrowski is not fit to

practice law in this Court.

The undersigned was designated to determine whether or not Mr. Ostrowski

should be reinstated to practice in this Court.  The Court concludes that Mr.

Ostrowski will not be reinstated to practice in this district because he has failed to

_____

[1]Victor Hugo

1

persuade the Court, "by clear and convincing evidence that he [] has the moral
qualifications, competency and learning in the law required for admission to
practice law before this court and that his [] resumption of the practice of law will
not be detrimental to the integrity and standing of the bar or to the administration
of justice, or subversive of the public interest."  Middle District Local Rule
83.26.3.

   On February 9, 2010, the Supreme Court of Pennsylvania suspended Mr.
Ostrowski from the Bar of the Commonwealth for a period of one year and one
day.[2]  On March 23, 2010, the Honorable Yvette Kane, then Chief Judge of the
Middle District of Pennsylvania imposed reciprocal discipline upon Mr. Ostrowski
pursuant to Middle District Local Rule 83.21.4, and suspended him from the Bar of
the United States District Court for the Middle District of Pennsylvania for a
concurrent period of one year and one day.  Mr. Ostrowski's suspension from the
practice of law in the courts of the Commonwealth of Pennsylvania expired three
years ago, but that suspension will continue until Mr. Ostrowski reapplies to the

---

   [2]The underlying discipline was imposed by the Pennsylvania Supreme Court
because a client of Mr. Ostrowski's, Aaron Chambers, complained about Mr.
Ostrowski's abandonment of his case and Mr. Ostrowski's failure to comply with
the Pennsylvania Rules of Professional Conduct.  Specifically, Mr. Ostrowski did
not maintain Chambers' fee in escrow, nor did he expressly state in the fee
agreement that the fee was non-refundable.

Supreme Court of Pennsylvania for admission and is, in fact, readmitted.[3]

On May 17, 2013, Mr. Ostrowski filed Motion to Reopen Case/Reinstate to Practice in this Court.  ECF No. 10.  Former Chief Judge Kane referred the case to the undersigned pursuant to Middle District Local Rule 83.26.3 for a hearing on the petition for reinstatement.  Former Chief Judge Kane also referred the petition to Hubert X. Gilroy, Esquire, counsel for the Court, in accordance with the aforementioned Local Rule.

The undersigned scheduled a hearing within 30-days as proscribed by Middle District Local Rule 83.26.3.  After granting two extensions of time to the hearing date (the first from Mr. Gilroy, the second from Mr. Ostrowski), a hearing was held on August 27, 2013 on petitioner's motion for reinstatement to the Bar of the Middle District of Pennsylvania.  Mr. Ostrowski represented himself at the hearing, but also had an attorney present as standby counsel, Donald A. Bailey.  Mr. Bailey, was, at the time of the hearing, an actively licensed attorney in

---

[3]It may seem disharmonious to readers of this opinion that Mr. Ostrowski can apply to be reinstated in the Middle District of Pennsylvania without the Pennsylvania Supreme Court first having released Mr. Ostrowski from his suspension.  There is precedent, albeit not binding on this court, set by our sister court in the Eastern District of Pennsylvania that allowed a suspended attorney to apply for readmission in that District Court without first having been readmitted by the Commonwealth.  *See, e.g., Surrick v Killion,* 2005 U.S. Dist. LEXIS 6755 (April 18, 2005) (Giles, C.J.).

Pennsylvania, but now, at the time of the instant Memorandum Opinion and Order, has been suspended by the Supreme Court of Pennsylvania from the practice of law in the courts of the Commonwealth for a period of five years.  Reciprocal discipline has not yet been entered in the Middle District of Pennsylvania; consequently, Mr. Bailey may still lawfully practice before this Court.

The undersigned permitted ample time within which to brief the matter, and allowed Mr. Ostrowski and Mr. Bailey to file briefs on Mr. Ostrowski's behalf. Mr. Ostrowski filed a supporting brief. ECF No. 46.  Mr. Baily filed a supporting brief. ECF No. 49.  Mr. Ostrowski and Mr. Bailey jointly filed a reply brief. ECF No. 58.  Mr. Gilroy filed a brief opposing the motion. ECF No. 52, and a sur-reply brief. ECF No. 61.

The matter is now ripe for disposition.

For all of the foregoing reasons, Mr. Ostrowski's motion for reinstatement[4] will be denied and Mr. Ostrowski will not be readmitted to the Bar of the Middle District of Pennsylvania.

---

[4]Insomuch as Mr. Ostrowski's motion is also a "Motion to Reopen Proceeding", in that Mr. Ostrowski requests that this Court reopen the disciplinary proceedings in the Pennsylvania Supreme Court, the motion is also denied. This Court lacks the authority to "reopen" the proceedings of another jurisdiction.

## II. DISCUSSION

Part 1:

Middle District Local Rule 83.26.3, Petitions for Reinstatement, states, *inter alia*,

> Petitions for reinstatement by a disbarred or suspended attorney under this rule shall be filed with the chief judge of this court.

> \*\*\*\*\*

> (b) If the petitioner is not entitled to reinstatement without a hearing the chief judge shall promptly refer the petition to counsel and shall assign the matter for prompt hearing before one or more judges of this court...The judge or judges assigned to the matter shall within thirty (30) days after referral schedule a hearing at which the petitioner shall have the burden of demonstrating by clear and convincing evidence that he or she has the moral qualifications, competency and learning in the law required for admission to practice law before this court and that his or her resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest.

"The clear and convincing evidence standard is an intermediate burden of proof, in between 'a preponderance of the evidence' and 'proof beyond a reasonable doubt.'" *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 159 (3d Cir. 2013) (internal citations omitted). "This heightened evidentiary standard requires evidence so clear, direct, weighty and convincing to enable a clear [decision]." *United States Fire Ins. Co. v. Kelman Bottles*, 2013 U.S. App.

5

LEXIS 19448, *18 (3d Cir. 2013) (non-precedential) (internal citations omitted).

Mr. Ostrowski has not met his burden as to the elements of the Middle District Local Rule. Mr. Ostrowski did not demonstrate by clear and convincing evidence that he has the moral qualifications, competency or learning in the law required for admission to practice law before this court. Nor did he demonstrate that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest.

Curiously, Mr. Ostrowski did not base any of his arguments on the standard set forth by the rule delineated above. Instead, Mr. Ostrowski based much of his argument on a hypothetical medical malpractice case against a psychiatrist who treated him for drug addiction eight years ago, Stephan P. Kruszewski, M.D. Second, Mr. Ostrowski focused his arguments on the *First Amendment* rights of freedom of speech and freedom of the press and how he believes that the rights apply to him, i.e. that he should be free to make, what the undersigned finds to be, outrageous prevarications regarding several of the distinguished judges of this district.[5] Neither of these arguments are persuasive to the Court. Moreover, Mr.

_____

[5]While the *First Amendment* protects free speech or political speech, untrue statements made either with malice, without a basis in fact, or with reckless disregard for their truth or falsity do not enjoy constitutional protection. Although

Ostrowski entirely ignored Middle District Local Rule 83.26.3, the gravaman for the pending motion for readmission.  ECF No. 12.

Part 2:

To begin, the Court finds that Mr. Ostrowski failed to demonstrate, by clear and convincing evidence, that he has the competency and learning in the law required for admission to practice before this court.  In fact, Mr. Ostrowski demonstrated to this Court exactly the opposite. Mr. Ostrowski has an obsessive focus on the actions of Dr. Kruszewski.  Any alleged malpractice by Dr. Kruszewski eight years ago has absolutely no bearing on the Court's current inquiry as to Mr. Ostrowski's fitness, or lack thereof, to practice law in this Court.

Mr. Ostrowski  argued that he failed to provide recently discovered alleged *Braun* evidence to the Pennsylvania Supreme Court in the underlying 2010 disciplinary action.  *See Office of Disciplinary Counsel v. Braun*, 553 A.2d 894 (Pa. 1989).  *Braun* evidence would allow Mr. Ostrowski to show, in the

---

political opinions are afforded protections, "[e]ven a statement cast in the form of an opinion ('I think that Judge X is dishonest') implies a factual basis, and the lack of support for that implied factual assertion may be a proper basis for a penalty." *Matter of Palmisano*, 70 F.3d 483, 487 (7th Cir. 1995) (Easterbrook, J.). Furthermore, "[c]ourts therefore may require attorneys to speak with greater care and civility than is the norm in political campaigns." *Id.* (citing *Florida Bar v. Went for It, Inc.,* 515 U.S. 618 (1995); *Gentile v. Nevada Bar*, 501 U.S. 1030, 1065-76 (1991)). "[T]he Constitution does not give attorneys the same freedom as participants in political debate." *Id.*

Commonwealth's proceedings, that there was psychiatric evidence to mitigate the discipline imposed by the Commonwealth.  However, no psychiatrist or psychologist has diagnosed Mr. Ostrowski with what he apparently self-diagnosed as post-traumatic stress disorder (hereinafter "PTSD") allegedly as a result of a severe burn he received as a child.

Despite the lack of a diagnosis from a physician, Mr. Ostrowski argues that Dr. Kruszewski missed this diagnoses when Mr. Ostrowski sought treatment from him eight-years ago for substance abuse issues and that Dr. Kruszewski in some fashion subsequently  "abandoned" him.  ECF No. 10 at 1, 7, 12-21; ECF No. 41 at 5.  Mr. Ostrowski testified that his "contention for this hearing is that had I been properly treated and diagnosed in the past...these disciplinary issues..never would have occurred...[or], had they occurred...the evidence would have been substantially mitigated by what is now a diagnosed medical condition."  ECF No. 41 at 7.

Mr. Ostrowski focuses his argument as to why he should be readmitted to practice in this Court on the alleged misdiagnoses by Dr. Kruszewski, rather than the appropriate focus, his current fitness to practice law.  ECF No. 10 at 12-22.  This argument fails.

Mr. Ostrowski was referred to Dr. Kruszewski in 2003 through Lawyers

Concerned for Lawyers. *Id.* at 13. Dr. Kruszewski treated Mr. Ostrowski for marijuana abuse. *Id.* at 12. Mr. Ostrowski wrote a statement that he titled, "Sworn Statement of Andrew J. Ostrowski," purportedly to explain that he was misdiagnosed by Dr. Kruszewski and to blame Dr. Kruszewski for the suspension of Mr. Ostrowski's attorney's license. ECF No. 12-22. That statement reads, in relevant part,

> Dr. Kruszewski deliberately withheld diagnostic information [about PTSD] from me, and then subjected me to a course of deliberate, torturous treatment, all with the specific intention of causing me extreme psychological, physical and emotional distress.... I was a lifelong marijuana user, and had also developed some issues with the use of adderall...

> I developed a substance abuse (marijuana) issue that was the only thing that ever helped me deal with my stress and pain, and function effectively. It is a psysiological condition that I was dealing with, and I essentially self-medicated my entire life. The marijuana is the only thing that ever allowed me to relieve the stress on my system, and helped me to be able to focus. Now that I know what my condition is, however, I have stopped using it, and am dealing with my condition medically and spiritually.

> *****

> I really did start to have anxiety issues with the stresses of law school, and working my way through school, like I have all my life, and the anxiety had torn me up and kept me down through most of my adult life. I did have flashes of brilliance when I had been using marijuana, or the adderall, but having the moral conflict that creates, and then crashed every time I tried to quit using it, and there had been many. Again, I don't currently use any drugs, prescribed or un-prescribed...

9

*****

The "mental breakdown" that led me to the psychiatric admission in June 2003 came after I had gone through an alternative treatment trying to "get clean" from using marijuana...I had just mentally collapsed, and became acutely suicidal...

*****

[I]t was "only pot"...that I was using...

*****

It was in early 2004 that things really began to turn. My work stresses really began to magnify as I was returning back to the active practice, and the divorce proceeding that my wife finally felt she had to file was finalized around that time.  Because of all this stress, I did start to get away from the 12-step stuff, and did start smoking marijuana again...[Dr. Kruszewski] neglected me.

*****

In early 2005, I was a complete mess, and in a constant state of anxiety that was like electricity coursing through my body, and even tried to return to using marijuana, but could not even tolerate using that.  I was alone, and had nothing, had just said my final goodbye to my marriage, had been though an incredibly stressful period of work...had experienced some other professional and personal losses, had no money, no friends, and nothing to look forward to.  I became acutely suicidal again.

*****

[Dr. Kruszewski] knew I was dealing with PTSD, and never mentioned that to me a single time.  These circumstances were engineered by, in part, and fully known to, Dr. Kruszewski.

I was lost, and Easter 2005, I went to stay with my sister's family for a couple days.  I had anxiety so bad that I was simply non-functioning in

any basic human way - I was a complete "basket case."

I made it through, and back to Harrisburg, and went into the Hershey med psych unit for a few days, with the same intense raging anxiety that had sucked nearly every ounce of life out of me...[A]fter I got out of Hershey med...I was left there alone with nothing and no one, and was feeling literally insane, an engineered stress condition related to the exacerbation of my PTSD condidition, and acute cortisol toxicity...

[Dr. Kruszewski] told [one physician and Don Baily] that federal Judge [REDACTED] was treating with him for an alcohol abuse issue, and issues associated with Judge [REDACTED] having a very tiny penis - it was one-inch I think was the problem.

*****

I am completely sane and completely rational as I submit this complaint, and I do not use any drugs, illegal or prescribed.  Dr. Kruszewski knew that I suffered from post-traumatic stress disorder, and related psychic conditions, as a result of third-degree burns that I suffered as a child.  He deliberately withheld his diagnosis from me, then, together with others, subjected me to a cruel and inhuman course of psychological torture.  He knew I was gravely suicidal for months, and never took any appropriate action to help me and protect me from harming myself, and in fact, engaged in conduct that only served to make my condition worse.  I firmly believe that he was trying to engineer my demise.

ECF No. 10 at 12-22 and Plaintiff's Exhibit 3A.

Mr. Ostrowski subpoenaed Dr. Kruszewski to testify at this Court's reinstatement hearing.  Dr. Kruszewski's counsel filed a motion to quash the subpoena, founded, in part, because Dr. Kruszewski fears that Mr. Ostrowski is a threat to him.  However, this Court denied the motion to quash, in part, because the

undersigned believed that these threats bear on Mr. Ostrowski's current state of mind.  The threats are relevant to his  moral qualifications, and whether his readmission would be detrimental to the integrity and standing of the bar and/or subversive of the public interest.  The Court found Dr. Kruszewski to be a credible witness.

Dr. Kruszewski attended Princeton University as an undergraduate student, then Harvard Medical School, with an emphasis in pediatric neurology.  He then went on to internal medicine at Beth Israel Deaconess Hospital in Boston, then to the Robert Wood Johnson University of Medicine and Dentistry where he studied psychiatry and worked as a faculty member in psychopharmacology and epidemiology.  He is licensed in Pennsylvania, Texas, California, Indiana, Nebraska, New Jersey and Delaware.  Dr. Kruszewski is board certified by the American Board of Psychiatry and Neurology and General Psychology.  He is also certified by the American Board of Addiction Medicine.  Dr. Kruszewski specializes in addiction medicine, with a secondary specialty in neuropsychiatry. ECF No. 41 at 46-47.

Dr. Kruszewski testified that he is "very concerned about [Mr. Ostrowski]." ECF No. 41 at 85.  Dr. Kruszewski further testified that a document that has been described as Mr. Ostrowski's 'manifesto,' Def.'s Ex. 3, (which will be discussed in

some detail later in this Memorandum Opinion) was the "ramblings of a grandiose and delusional individual." ECF No. 41 at 89. Additionally, lest one think that the judges in the Middle District of Pennsylvania are the only targets of Mr. Ostrowski's prevarications (fabrications that will be discussed in further detail later in this Memorandum Opinion), Dr. Kruszewski also testified that Mr. Ostrowski "knowingly misrepresents truths about me and spread it...and put it on [the] website [Mr. Ostrowski operates.]"

In support of Mr. Ostrowski's contention that he was misdiagnosedwhen treating with Dr. Kruszewski for drug addiction eight years ago, Mr. Ostrowski had his current treating physician, Stephen Schwartz, M.D., testify on his behalf. ECF No. 41 at 18-38. Dr. Schwartz is not, as one may expect of a physician purportedly treating a mental condition, board certified in psychiatry, but is, instead, board certified in emergency medicine. *Id.* at 21. Moreover, Dr. Schwartz has no specialized training in psychotherapy or psychology. *Id.* at 30. He and his wife have operated a family practice for the past 25 years, the last ten of which have focused on holistic healing, including traditional Chinese medicine and acupuncture. *Id.* at 21.

It is notable that Dr. Schwartz did not diagnose Mr. Ostrowski with PTSD, Mr. Ostrowski self-diagnosed this condition. Dr. Schwartz testified,

[W]hat patients tell me basically that's – you know, that's largely the basis for what their diagnosis can be called.   And you know, that was the diagnosis essentially that you gave me when you came.  And I saw no reason to – I agree with that...I mean, that's largely the reason that you came to see me for treatment, I believe.  And in my notes, in my office notes basically that's the second word, PTSD.  You know, when people come in I ask what they're here for, and that's what you told me and that's how I wrote it down...[W]e try not to get too hung up on diagnoses.

*Id.* at 21-22 and 26.   Dr. Schwartz is currently treating Mr. Ostrowski's self-professed PTSD with acupuncture treatments.  *Id.* at 31.

While the newly discovered alleged *Braun, supra,* evidence may be relevant to the Supreme Court of Pennsylvania and its 2010 decision whether or not to suspend Mr. Ostrowski, it is not relevant to this Court and its current position of determining whether or not to reinstate Mr. Ostrowski to the Bar of the Middle District of Pennsylvania. This Court is not in a position to re-open another jurisdiction's disciplinary proceedings.

This Court is interested in Mr. Ostrowski's current fitness to practice law. The undersigned concludes that Mr. Ostrowski does not have the competency or learning in the law to represent the public before this Court.   Remarkably, he is not even able to direct his arguments in his own case on the standard of review to be applied by this Court.  Mr. Ostrowski's obsession with Dr. Kruszewski is entirely irrelevant as to whether or not he currently has the competency and learning in the

14

law to resume practice in this Court.  Mr. Ostrowski did not persuasively argue, either in his testimony and argument, or in his papers, that he fully grasps the standard relevant to his readmission petition.

In addition to his misplaced arguments, Mr. Ostrowski also did not handle the objections of counsel and direction by the Court professionally.  He appeared to take objections and Court decisions as personal insults to him.  During the hearing Mr. Ostrowski said the following:

> What's inappropriate is this wise guy response like does he want to compensate him for being an expert witness.  Just make an objection on the record next time.  And I don't need to be patronized or ridiculed about asking appropriate objections (sic). So that's one thing that's inappropriate about the objection.
>
> *****
>
> But they get up and object kind of knowing, you know, that they are just – they just muddy the waters.  I could have been done with this witness a considerable period of time ago. Every question that I ask, it makes me feel well – and I've been down this road too many times to even count, that I'm sitting here thinking well, if I asked this question and the judge is going to start getting frustrated with me.  But I think it's a relevant question.  I know it's a relevant question.  I know in all my experience, education and training that these are relevant and material issues to these proceedings, but I'm going to start angering the judge.  He's going to allow theses guys to get up an object to every single question I ask.  And it creates a very cumbersome process.

Later, the Court and Mr. Ostrowski had the following exchange:

*MR. OSTROWSKI:* Well, with all due respect, Your Honor, I think I understand what you want me not to do. It is hard for an attorney or litigant in my position to conform my thinking and presentation to matters that I know just are in error. And I – you know, I say this with all due respect. You know, I attached this motion – this statement to my motion that was all about Dr. Kruszewski. You know, the hearing was granted on the motion with this statement attached. There were no – there wasn't even a response to the motion asked for. There was no prehearing procedures put into place.

*THE COURT:* But Mr. Ostrowski, you are kind of getting to what the Court would be concerned about. That is this. Courts make rulings and sometimes those rulings are in error. Some of my rulings may be in error. Mr. Meguerian strongly believes that the ruling I made on August 23rd was in error. He may be right about that.

The Court did its level best to consider the motion to quash and to make a ruling on that motion to quash that day, which meant moving everything else off the Court's desk to attend to that issue. The reason for that is, of course, we had the hearing on Tuesday. But we disagree about that intellectually. If you can't conform – I use that simply as an example here.

If you, as an attorney, as an officer of the court, cannot conform your thinking to a Court's ruling, how on earth can you return and effectively practice before this or any other Court? Judges make rulings that you may not agree with intellectually. And those judges, or at least this judge, acknowledges that those rulings in some cases may be in error, even if the Court does its level best to make those rulings correctly, you know with appropriate intellectual consideration –

*MR. OSTROWSKI:* I --

*THE COURT:* –courts make rulings. All Courts do. If the Court doesn't make a ruling and the ruling is not followed, you just end up descending into some level of chaos. We can't have that. Even if the rules are incorrect, in the case law that has developed in this country it's very clear on that point. And for that matter, it is in Great Britain, from which

we have borrowed the constitutional scheme in a sense and certainly our law to a large degree.

We understand that Courts may make rulings that are incorrect, but counsel and the parties are bound to follow those rulings unless they are overturned by an appellate court.

*MR. OSTROWSKI:* And –

*THE COURT:* If you can't conform your thinking to a Court's ruling that is adverse to what you firmly believe is incorrect, how can you return effectively to the practice of law? That's what –aren't you suggesting that you're not able to do that? Well, if you're not able to do that, are you able to effectively practice before the Bar of this Court knowing that from time to time the federal judges sitting in the Middle District of Pennsylvania and hearing matters which you are appearing as counsel of record for clients, may make adverse rulings? Isn't that what you're saying?

*MR. OSTROWSKI:* Well, no, that is not what I'm saying.

*THE COURT:* Well then, you restate it. I don't want to put words in your mouth. It sounds to me like that's what you're telling me.

*MR. OSTROWSKI:* It's very well taken, what you're saying. And it's – in all due respect, it is a two-way street, Your Honor, that you know, the judges at times have to sit behind the bench and have the same faith and respect for attorneys that they demand of themselves, and to know that attorneys like myself have a demonstrated history of competence before these courts.

I believe that I have conducted myself fully appropriately at all times before every court. I have been fully prepared – except for in these times of psychic distress that I went though, I have been fully prepared on the law and the facts in my case.

Now, it's when the Court starts to gesticulate, and I'm not suggesting you do this, but I sense you're starting to get – the frustration comes

across and you are able to communicate –

*THE COURT:* I don't think I'm particularly frustrated with you.  If I
have demonstrated frustration or any discourtesy, you please care to
point that out to the Court.  What I will do is this, Mr. Ostrowski.  I think
what attorneys forget, and what I tried to do when I was at the Bar – I
practiced before the Bar of the Commonwealth and the Bar of this Court
for about 22 years.  What I tried to do is I tried to go into court and I
tried to appear before judges and juries and really any other attorneys,
my clients, members of boards that I sat on, and I tried to go in and I
tried to persuade them.  I tried to persuade them of my position.  Seems
to me that that – beyond the ethics of the matter, that's what attorneys
should try to do.

ECF No. 41 at 58, 63-68.

Mr. Ostrowski's inability to "conform his thinking" also indicates that he is

not competent to return to practice.  To accuse counsel of making "wise guy"

remarks suggests a level of mental and emotional immaturity.  As the Court's

exchange with Mr. Ostrowski delineates, attorneys need to respect opposing

counsel and the Court, even if that attorney does not agree with the decisions made

by the Court.  No attorney has received decisions in his or her favor in perpetuity.

For Mr. Ostrowski to become distressed and unsettled when decisions are made

that are not in his favor, indicates that he is not fit to return to practice at this time.

For all of the foregoing reasons, the Court holds that Andrew J. Ostrowski,

at this time, has neither the competency nor the learning in the law to resume

practice in this Court.

Part 3:

Mr. Ostrowski also did not demonstrate by clear and convincing evidence that he has the moral qualifications to resume the practice of law in this Court. Nor did he demonstrate by clear and convincing evidence that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest.

Mr. Ostrowski has repeatedly made personal accusations against judges of this Court, degrading attacks that have no basis in fact whatsoever.  Here are some illustrations: Mr. Ostrowski has repeatedly discussed the size of the genitals of one of the judges of this district, frequently referring to the size of that judge's penis as "one inch in length;" accused the same judge of having an alcohol abuse issue; in a letter to Mr. Gilroy he described that same judge as "a rogue judicial officer with no regard for the federal judiciary except to the extent it serves his emasculated personal agenda;" he wrote that "two of these federal judges, [REDACTED], waltzed right across jurisdictional lines, willy-nilly, and right across the street in Harrisburg to testify, falsely, in their lawless effort, against Don Bailey;" he asserts that three of the senior judges "had a secret meeting when they were out to get [Don Bailey];" he asserts that one judge entered into an "assault" on Don Bailey; and he asserted that three of the judges of this Court run the Court "with the

mentality of some state bureaucrats sycopahants." ECF No. 10 at 21, ECF No. 41 at 82, 146, 154-157, 178, Pl.'s Ex. 10, Pl.'s Ex. 11, Def.'s Ex. 1, Def.'s Ex. 2, Def.'s Ex. 3, ECF No. 58 at 6 and 10.

In addition, Defendant's Exhibit 3 includes what was described at the hearing as Mr. Ostrowki's "manifesto. " The letter, dated February 26, 2013, is a ten-page, rambling diatribe addressed to the Supreme Court of Pennsylvania and copied to the Vatican, President Obama, Senators Casey and Toomey, and the Justices of the United States Supreme Court. In this particular letter, Mr. Ostrowski bounced from topic to topic with no coherent argument or cogent thesis. He discussed one of his many conspiracy theories, in which he believes the Courts "are out to get" him and Don Bailey and accused the Court of having "vengeful motivations." *Id.* He wrote that he wants to "do everything in my legal power to take this crooked system apart." *Id.* He described one of this Court's senior judges as "try[ing] very hard to engineer her administration of justice around, in her tired, transparent and dishonest fashion...because she thinks she's an expert at duping juries with contrived instructions..." *Id.* Once again, Mr. Ostrowski wrote about the penis size of one of this Court's judges, describing it as a "button." *Id.* He then digressed into his opinions of the Sandusky case at the Pennsylvania State University and the accompanying Freeh report. *Id.* He further digressed into his

economic plan for the United States, which includes placing Mrs. Obama and all female senators in charge of the economy.   Mr. Ostrowski then demanded $5,000,000 payable to him and $1,000,000 payable to his website for the "crooked treatment" he has "endured." *Id.*   To conclude, Mr. Ostrowski requested that impeachment proceedings should be instituted against three judges of this Court, calling them "terrible people, and no better as judges anyway." *Id.*

In an email, also dated February 26, 2013, addressed to approximately fifty email addresses, Mr. Ostrowski further explained his conspiracy theory as a "Jesuit infiltration behind [the] Civil War, Lincoln assassination, Vietnam War, Iraq War, and Bailey Disciplinary proceedings." Def.'s Ex. 3. He claims that the Jesuits are the "military arm of the Catholic church" and that they "run the CIA [and] dominate the courts." *Id.*   He wrote that the "goal" of this "infiltration" is "the slavery of the entire world." *Id.*   He asserted that one of this Court's magistrate judges is "a Jesuit himself, and chief architect, or at least the public face of the professional assassination of Don Bailey." *Id.*   Mr. Ostrowski claimed that this conspiracy, that as "gone on for a third of a century," is the reason one of the United States Supreme Court Justices was appointed to that court.  *Id.*

Additionally, Mr. Gilroy presented to the court as Defendant's Exhibit 5, six videos from Mr. Ostrowski's website of him speaking to an interviewer.  The

videos offer more of the same vitriolic denunciations of the members of this Court.

In the first video, entitled PCRLN # 1 Mr. Ostrowski describes Don Bailey's disciplinary hearings, stating, "I don't even like to use the term 'hearing' because they were a joke." *Id.* "[The hearings were] fixed from the start." *Id.* Mr. Ostrowski described the proceedings as "kangaroo court hearings." *Id.* He went on to say "[t]hey came down with an order and they said we have found evidence of a violation, they don't tell you what violation. It's kinda like your back in an Old Eastern Block country. You're in violation of the law, come in and we'll tell you how we're going to punish you but don't tell you what your found guilty of or anything." *Id.* Later in the video, Mr. Ostrowski stated,

> this is nothing but engineered justice. This is federal judges picking up the phone because of the kinds of cases that Don Bailey would bring, and the kind of success that he was having. And ruffling feathers. And not wanting to deal with civil rights cases. And coming from a conservative republican bastian of central Pennsylvania. And thinking that their cultural views are the world or how the world really works and creating this entire circumstance to get rid of the thorn in their side for trying to do what's right by Pennsylvania. Pennsylvania is a corrupt state. It's corrupt top to bottom. It's corrupt in the governor's office. And it's corrupt in the Courts.

*Id.*

Mr. Ostrowski went on to say, "Pennsylvania...the politics that go on in Pennsylvania, it's just a culture of picking up phones and doing somebody's bidding." *Id.* "The reason that it's allowed to get so out of control is that the

federal courts aren't doing their job." *Id.* "They are more caught up in old state political agendas to get Don Bailey. Old judges who have had their preconceptions about Don Bailey and the kind of work that he does. And they are just picking up in lockstep and carrying forward with these agendas, without regard for any critical thought of it, without regard to the damage they are doing to their job, their role as a judge, and without regard to the harm they are doing to their country." *Id.* "The courts are getting away with anything and everything that they want. There's just no check on them." *Id.* "The problem in Pennsylvania is intrinsic to the Constitution. The Constitution gives the Pennsylvania Supreme Court extraordinary, exclusive power, over the licenses of attorneys. So when a court has all the power over your bread and butter and your ability to earn a living, and your ability to represent clients, and you have to do your job in front of that court who is holding this hammer over ya, that's just an incredibly coercive thing to, or influence, as you make decisions."

In the second video, titled PCRLN # 2, Mr. Ostrowski says that "The Attorney General's office files a motion, with Judge [REDACTED], and this is probably back in the year 2000; a motion with Judge [REDACTED] to have me recused as the attorney in the case. Basically saying you gotta get rid of him as the attorney for the person who hired him and is paying him, this minority business.

And Judge [REDACTED] grants it, and I didn't sit back and take too kindly to that.  I don't think I was rude or disrespectful.  I may be disrespectful, I may be disrespectful, I mean how do you respect something that is just disrespectful inherently." *Id.*

In the third video, titled PCRLN # 3, Mr. Ostrowski is describing a hearing that he attended with a client, a homeless man, after an animal protection society seized a dog from the man.  Mr. Ostrowski said,

> The last words he, [the judge], said before he walked off the bench that day were 'We're going to do what's in the best interests of Barron.' Barron is the dog.  This is a federal...you know it's going to be hard to bite my lip and not curse. This is a federal judge, getting on a federal bench with my homeless man, who has had his dog taken by these people, and the judge gets up there and says we're going to do what's right by the dog.  I wanted to jump out of my chair and chase him down and say 'you mother f-er.'...He struts off the bench like he's some smart guy and he did the right thing there.

*Id.*

In the fourth video, titled PCRLN # 5, Mr. Ostrowski described the opinions of some of the judges of this Court.  "[Magistrate Judge REDACTED] is a liar, is a perjurer. He got on the stand at in this disciplinary proceeding and he lied under oath." *Id.* "I know [REDACTED] well enough.  He thinks he's smart, and he thinks he's cute and he thinks he's powerful now that he's a Magistrate Judge" *Id.*

Mr. Ostrowski contends that he is "sensitive to the fact that he has been

critical of some of the judges of this Court...and that...[he] has always conducted himself with the utmost integrity and professionalism." ECF No. 10 at 2. He also claims, with regard to his "manifesto," Def.'s Ex. 3, that the "letter was sent to every judge in the Middle District in a good faith basis...I think my language is all appropriate" ECF No. 41 at 145-146. He also states that Defense Exhibit 1, cited to *supra*, "categorically demonstrates Petitioner's good faith, reasonableness, rationality, and respect in all of his dealings with the courts." ECF No. 46 at 5.

In addition to this delusional rambling, Mr. Ostrowski does not accept responsibility for the aspersions he has invented about the judges of this Court. He testified that his frequent comments about the genital size of one judge; the accusation that another is a "liar and a perjurer"; the accusation that the federal judges act in "crony political ways"; that three judges "had a secret meeting when they were out to get [Don Bailey]" were not "said with malice" the statements are "factually true." ECF No. 41 at 154-158.

Mr. Ostrowski's assertions of good faith and probity are simply unbelievable. Mr. Ostrowski has made, and continues to make, scurrilous and unsettling allegations about the judges in this District that are patently untrue and not based on a reasonable semblance of truth. His statements are intended to bring the judiciary into undeserving disrepute. His obloquies evidence an individual

without the moral qualifications to resume the practice of law in this Court.

Additionally, his inventions, both about the judges and his conspiracy theories,

demonstrate that he is an individual whose resumption of the practice of law would

be detrimental to the integrity and standing of the bar, the administration of justice,

and subversive of the public interest.

Finally, Mr. Ostrowski fails to accept responsibility for the underlying

discipline imposed by the Supreme Court of Pennsylvania.  Mr. Ostrowski instead

asserts that the Disciplinary Board was incorrect in finding that he violated the

Pennsylvania Rules of Professional Conduct regarding his mismanagement of his

client's funds.  ECF No. 10 at 6 ¶¶ 5-6.  He also testified that it was only his

association with Don Bailey that resulted in his suspension, stating "I still would

not have been suspended, no way, if it wasn't for my association with Mr. Bailey."

Pl.'s Exhibit 11.  Mr. Ostrowski views himself as the "victim" and "often felt

attacked."  Def.'s Ex. 1.

The Court holds that for all of the foregoing reasons, Mr. Ostrowski does not

have the moral qualifications to resume the practice of law in this Court. Nor did

he demonstrate by clear and convincing evidence that his resumption of the

practice of law will not be detrimental to the integrity and standing of the bar or to

the administration of justice, or subversive of the public interest.

Part 4:

Mr. Ostrowski will not be readmitted to the Bar of the Middle District of Pennsylvania.  He has not shown by clear and convincing evidence that he has met the standard set forth in Middle District Local Rule 83.26.3, as cited and discussed above at length.  Moreover, "[t]here is no vested right in an individual to practice law.  *In Re Disbarment of Isserman*, 345 U.S. 286, 289, 73 S. Ct. 676, 97 L. Ed. 1013 (1953) (vacated on other grounds).

> Rather, there is a right in the Court to protect itself, and hence society, as an instrument of justice.  That to the individual disbarred there is a loss of status is incidental to the purpose of the Court and cannot deter the Court from its duty to strike from its rolls one who has engaged in conduct inconsistent with the standard of expected of officers of the Court.

*Id.*  The Court of Appeals for the Third Circuit has stated that "[d]ue to the vital societal interests at stake, "any doubt" as to a petitioner's fitness to practice in a federal court should be "resolved in favor of the public."  *In Re Ronald T. Mitchell, Esq., In Re Stafford A. Hilaire, Esq.*, 901 F.2d 1179, 1190 (3d Cir. 1990).   There is considerable doubt as to Mr. Ostrowski's fitness to practice in this federal court; the rationale buttressing this doubt is articulated in nauseating detail above.

## III.  CONCLUSION

"Strong and bitter words indicate a weak cause."[6]  Mr. Ostrowski employs many strong and bitter words in his speeches and writings, but his cause against the judges is weak, and, more importantly, misguided.  Throughout the hearing and his briefs, Mr. Ostrowski trumpeted his displeasure with the members of this bench and with his former treating physician.  Mr. Ostrowski's arguments are not in tune with his desired outcome.  He continues to disrespect the authority of the Court.

Mr. Ostrowski's task was to persuade the Court that he is fit to be reinstated to practice law in the Middle District of Pennsylvania. He has not done so; in fact, he has done precisely the opposite.

For all of the reasons set forth in the preceding paragraphs, the undersigned holds that Mr. Ostrowski has not demonstrated by clear and convincing evidence that he should be reinstated to practice.  Accordingly, Mr. Ostrowski's motion will be denied and he will not be reinstated to the Bar of the Middle District of Pennsylvania.

---

[6]Victor Hugo

An Order in accordance with the instant memorandum opinion will issue this date.

BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge